UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ORION B. ROBERTS,

    Plaintiff,

v.                                     Case No.  8:21-cv-1935-WFJ-CPT

LT. BURTZ, et al.,

    Defendants.
_____/

**ORDER**

Plaintiff Orion B. Roberts, a convicted and sentenced state prisoner, sues under 42 U.S.C. § 1983. He proceeds on his Second Amended Complaint in which he asserts claims of excessive force, assault, battery, and failure to intervene against Lt. Burtz, Officer Peet, and Officer Cloud in their individual capacities.[1] (Doc. 14) Defendants Burtz, Peet, and Cloud move to dismiss (Docs. 32 and 33) the Second Amended Complaint, and Mr. Roberts responds in opposition (Doc. 37).

**I.**     **Second Amended Complaint**

Mr. Roberts alleges that he was confined at the Hardee Correctional Institution when, at approximately 11:30 p.m. on October 29, 2020, a search of his cell was conducted. (Doc. 14 at 12) During the search, a pat-down was conducted and a knife

---

[1] Prior screening orders (Docs. 10, 13, and 15) dismissed with prejudice Mr. Roberts's claims against the defendants in their official capacities and his claim for procedural due process violations.

fell from his waistband.  (*Id.*)  Mr. Roberts picked up the knife and gave it to Officer Durden.  (*Id.*)  Officer Durden "rushed" him, and the two struggled with one another while the weapon remained in Mr. Roberts's hand.  (*Id.*)  Mr. Roberts dropped the knife, and Officer Durden pushed him to the wall and placed handcuffs on him.  (*Id.*)

Sergeant Warner became aggressive and spat in his face.  (*Id.*)  At that moment, Mr. Roberts "placed [his] forehead on [Sgt. Warner's forehead] and pushed with little force."  (*Id.*)  Officer Durden slammed him to the ground, and Mr. Roberts ceased all disruptive behavior.  (*Id.*)

Defendants Lt. Burtz, Officer Peet, and Officer Cloud arrived on the scene with leg irons and placed Mr. Roberts in full body restraints.  (*Id.*)  Mr. Roberts was not being disorderly.  (*Id.*)  He was forced to stand up and walk "while the restraints cut [his] ankles due to the tightness of the leg irons."

Officer Cloud told him he was "about to be 'did in' meaning beaten due to the fact that [he] assaulted Sgt. Warner who was a female corrections officer."  (*Id.*)  Officer Cloud wrapped his arms around Mr. Roberts in an aggressive manner and slammed him to the ground, breaking his right middle finger.  (*Id.*)  Next, the defendants again picked him up and carried him out of the dormitory.  (*Id.*)

Once they were beyond view of the cameras, the defendants dragged, kicked, and beat Mr. Roberts with extreme force.  (*Id.*)  Lt. Burtz ordered Officers Cloud and Peet to "do [him] in."  (*Id.*)  Mr. Roberts was thrown several feet into the air and landed on his face in the hard asphalt, injuring his right eyebrow and chin.  (*Id.*)  While

2

he was on the ground, Lt. Burtz ordered Officer Cloud to hold his head in a sideways position while Officer Peet sprayed him with chemical agents to suffocate him. (*Id.*) The defendants then carried Mr. Roberts to a shower where he washed off the chemical agents. (*Id.*)

Mr. Roberts was transported to two hospitals where his right finger was sown back on and where he received nine sutures for the lacerations on his face. (*Id.*) As a remedy for his injuries, Mr. Roberts seeks to recover $200,000.00 in compensatory damages. (*Id.* at 5)

## II.  Standard of Review

A *pro se* complaint is entitled to a generous interpretation. *Haines v. Kerner*, 404 U.S. 519 (1972). On a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the Court must view the allegations in the complaint in the light most favorable to the plaintiff, and consider the allegations in the complaint, including all reasonable inferences, as true. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Even so, the complaint must meet certain pleading requirements. Under Rule 12(b)(6), a complaint that fails to "state a claim upon which relief can be granted" is subject to dismissal. In reviewing a motion to dismiss, a court considers the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). To withstand a motion to dismiss, the complaint must state a claim to relief

3

that is plausible on its face; that is, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Further, under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If the court cannot "infer more than the mere possibility of misconduct," the complaint does not show entitlement to relief. *Iqbal*, 556 U.S. at 679.

## III. Analysis

### A. Excessive Force and Failure to Intervene

Defendants Burtz, Peet, and Cloud[2] argue they are entitled to qualified immunity because Mr. Roberts "demonstrat[ed] behavior that was dangerous and an

---

[2] As an additional basis for dismissal, Defendant Cloud asserts that "he was not present at the subject location at the subject time." (Doc. 32 at 1) However, the Court must consider the allegations in the Second Amended Complaint, including the allegations that Officer Cloud participated in the alleged constitutional violations, as true. Therefore, Defendant Cloud's asserted absence from the scene is not a proper basis for dismissal at this stage of the proceedings.

4

imminent threat to others."[3] (Doc. 32 at 8; Doc. 33 at 7) "Questions of qualified immunity should be resolved at the earliest possible stage in the litigation. A district court should therefore grant the defense of qualified immunity on a motion to dismiss if the complaint fails to allege the violation of a clearly established constitutional right." *Dalrymple v. Reno*, 334 F.3d 991, 994–95 (11th Cir. 2003) (quotations omitted).

For qualified immunity to apply, the defendant must first show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Fish v. Brown*, 838 F.3d 1153, 1162 (11th Cir. 2016). Here, the defendants' alleged actions plainly fall within the scope of their discretionary authority. Once that is established, the Court engages in a two-step inquiry: (1) whether, taken in the light most favorable to the plaintiff, the factual allegations show the defendants' conduct "violated a constitutional right"; and (2) whether the constitutional right was "clearly established." *Id*.

"Under the Eighth Amendment, force is deemed legitimate in a custodial setting if it is 'applied in a good-faith effort to maintain or restore discipline' and not 'maliciously and sadistically to cause harm.'" *Sears v. Roberts*, 922 F.3d 1199, 1205

---

[3] Additionally, the defendants argue that the Second Amended Complaint constitutes an impermissible shotgun pleading. (Doc. 32 at 3–4; Doc. 33 at 3–4) The Court rejects this additional ground for dismissal because, as explained in a prior order, the Court screened the Second Amended Complaint under 28 U.S.C. §§ 1915(e) and 1915A and determined that Mr. Roberts's claims of excessive force, assault, battery, and failure to intervene were sufficient to proceed to service of process. (Doc. 15 at 3–4)

(11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To determine whether force was used "maliciously and sadistically," the Court considers:

> (1) The need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response.

*Sears*, 922 F.3d at 1205 (quotations omitted). The Court "must give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Id*. (quotations omitted). "The focus of [the Court's] Eighth Amendment inquiry is on the nature of the force applied, not on the extent of the injury inflicted." *Id*. (citation omitted). Relevant to this case is the principle that "[o]nce a prisoner has *stopped resisting* there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 953 (11th Cir. 2019) (quotations omitted).

Mr. Roberts alleges that he "cease[d] all of [his] disruptive behavior" after Officer Durden slammed him to the ground. (Doc. 14 at 12) While Mr. Roberts was still on the ground and in handcuffs, Defendants Lt. Burtz, Officer Peet, and Officer Cloud arrived on the scene with leg irons. (*Id*.) According to Mr. Roberts, "while now being in full body restraints and not being disorderly," he was forced to walk. (*Id*.) Next, Officer Cloud slammed Mr. Roberts to the ground, breaking his finger. (*Id*. at 13) While still in restraints, Defendants Burtz, Peet, and Cloud carried Mr. Roberts to a location out of view of cameras, where they proceeded to drag, kick, and beat him with extreme force. (*Id*.) They threw him into the air several feet, causing him to land

6

on his face on the hard asphalt. (*Id*.) While Mr. Roberts was on the ground, Lt. Burtz ordered Officer Cloud to hold his head in a sideways position while Officer Peet sprayed him with chemical agents to suffocate him. (*Id*.)

The defendants focus on Mr. Roberts's conduct *before* he was restrained with handcuffs and leg irons. Indeed, Mr. Roberts alleges that this incident began during a search of his cell when a weapon dropped from his waistband. (*Id*. at 12) Mr. Roberts "proceeded to pick the weapon up," he "struggle[d] with [Officer Durden] while the weapon was still in [his] hand," and he "placed his forehead on [Sgt. Warner's forehead] and pushed with little force." (*Id*.) However, according to Mr. Roberts, he ceased all disruptive behavior after Officer Durden slammed him to the ground, and he was "in full body restraints and not being disorderly," when the defendants allegedly slammed him to the ground and beat him. (*Id*. at 12–13)

Accepting as true Mr. Roberts's allegations that he was restrained and compliant when Defendants Burtz, Peet, and Cloud arrived on the scene, he has sufficiently pleaded a violation of his clearly-established right to be free from excessive force. "[G]ratuitous use of force when a criminal suspect is not resisting . . . constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (citing *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002)); *see also Piazza*, 923 F.3d at 953 ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, has been subdued, or he is otherwise incapacitated—that use of force is excessive."). Furthermore, the constitutional right to be free from excessive force was clearly established when this

7

incident occurred. Generally, "[i]n [the Eleventh Circuit] a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution." *Skritch v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("By 1998, [Eleventh Circuit] precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued[.]").

Additionally, Mr. Roberts has sufficiently pleaded a failure to intervene claim. The Court must accept as true his allegations that Defendants Burtz, Peet, and Cloud together participated in dragging and kicking him, throwing him into the air, and spraying him with chemical agents, all while he was restrained and compliant. Caselaw is clear that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Sears*, 922 F.3d at 1205 (quotation omitted); *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (same). Accordingly, at this stage of the litigation, Defendants Burtz, Peet, and Cloud are not entitled to qualified immunity on the claims of excessive force and failure to intervene.

    **B.**    **Assault and Battery**

Defendants Burtz, Peet, and Cloud move to dismiss Mr. Roberts's assault and battery claims, arguing that he "fails to plead an assault or battery cause of action" and instead "only references his own assault and possession of a weapon." (Doc. 32 at 10;

8

Doc. 33 at 9–10)  In response, Mr. Roberts repeats allegations from his Second Amended Complaint, including that the defendants "dragged, kicked and beat[] him . . . with extreme force" while he was restrained with leg irons.  (Doc. 14 at 12–13)

Under Florida law, "a presumption of good faith attaches to an officer's use of force . . . and an officer is liable for damages only where the force used is clearly excessive . . . . A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances."  *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (citations omitted).  "Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer 'reasonably believes the force to be necessary to defend himself or another from bodily harm[.]'" *Id*. (quoting Fla. Stat. § 776.05(1)).  "If an officer uses excessive force, the ordinarily protected use of force . . . is transformed into a battery."  *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006) (quotations omitted); *see also DeJesus v. Lewis*, 14 F.4th 1182, 1195 (11th Cir. 2021) ("Claims of . . . assault have generally been analyzed under the legal framework for excessive force claims.")

Having concluded that Mr. Roberts's excessive force claim is not subject to dismissal at this stage of the proceedings, for the same reasons, his state law battery and assault claims may proceed.  *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006) (dismissing Florida battery claim on same grounds as § 1983 excessive force claim)

### III. Conclusion

Accordingly, it is **ORDERED** that:

1. The Motions to Dismiss (Docs. 32 and 33) are **DENIED.**

2. No later than **30 DAYS** from the date of this Order, the parties must submit a joint case management report. M.D. Fla. L. R. 3.02(a).

**DONE** and **ORDERED** in Tampa, Florida on January 25, 2024.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE